**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ABBOTT RAPID DX N. AM., LLC,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 4428** |
| | ) | |
| **eMED, LLC and eMED LABS, LLC,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Abbott Rapid Dx North America, LLC has petitioned the Court under the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, to compel eMed, LLC and eMed Labs, LLC to arbitrate their dispute with Abbott rather than filing suit in court. eMed opposes the motion.

Abbott and eMed entered into an agreement entitled Supply, Distribution and License Agreement in December 2020. The agreement contained an arbitration provision that the Court will discuss momentarily. In July 2022, Abbott initiated an arbitration against eMed seeking to recover for unpaid invoices. According to Abbott, eMed declined to cooperate in the arbitration. In August 2022, Abbott contends, eMed stated that it objected to proceeding in arbitration because the agreement to arbitrate had been procured by fraud and the procedural terms of the arbitration were unconscionable. At some point eMed also indicated that it might assert claims against Abbott but intended to pursue them in court, not in the arbitration. Abbott says that any such claims are subject to an arbitration clause in the parties' agreement. It filed the

present suit in the latter part of August 2022 to compel eMed to arbitrate.

The pertinent provision of the parties' contract reads as follows:

(a)  Subject to Section 13.18(b), all disputes arising out of, or relating to, this Agreement, including any dispute regarding the Agreement's validity, termination, or the performance or breach hereof, shall be resolved in accordance with the alternative dispute resolution procedures set forth in Schedule 13.18.

(b)  The parties and eMed agree that any request for provisional remedies and any request for injunctive relief as described in Section 13.16, shall be heard and determined in the courts of the United States District Court for the Northern District of Illinois located in the City of Chicago, Illinois (or, if the Northern District of Illinois declines to accept jurisdiction, in the Illinois State Courts located in the City of Chicago), and eMed and eMed Parent hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such action and irrevocably waives [sic] the defense of an inconvenient forum, improper venue, or lack of jurisdiction to the maintenance of any such action.

Pet. to Compel Arb., Ex. A § 13.18.  Schedule 13.18, referenced in the quoted passage, sets out the procedures for arbitration.  The Court will return to those later in this order.

Arbitration is a matter of contract; a party cannot be required to submit to arbitration a dispute that it has not agreed to arbitrate.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 48 (1986).  In deciding whether parties agreed to arbitrate a particular matter, courts rely on state contract law governing the formation of contracts.  *See, e.g., First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

eMed does not contend that its anticipated claims against Abbott fall outside the scope of the agreement to arbitrate.  Rather, it argues that the arbitration agreement is unenforceable.  In particular, eMed contends that it was fraudulently induced to enter in the arbitration agreement and also that the arbitration provision is unenforceable because it is unconscionable.

Section 13.18(a) says that disputes over the contract's validity are resolved under

2

the contractual arbitration procedure—in other words, by an arbitrator, not by a court. Parties may delegate threshold questions of arbitrability to the arbitrator, so long as their agreement does so by clear and unmistakable evidence. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Section 13.18(a) meets that test as it relates to disputes over the validity of the contract as a whole.

eMed alleges fraud in the inducement, but (at least for now) it contends in particular that it was induced by fraud to enter into the agreement to arbitrate disputes. Both the Supreme Court and the Seventh Circuit have drawn a distinction between claims of fraudulent inducement to enter into a contract and claims of fraudulent inducement to agree to arbitration. When (as here) there is an arbitration provision that delegates questions of contractual validity to the arbitrator, the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally," but a court may "consider . . . issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967); *see also James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005). To put it another way, and more specifically, "a court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud." *James*, 417 F.3d at 680 (quoting *Sweet Dreams Unlimited v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 n.4 (7th Cir. 1993)).

Abbott conceded this legal point in its reply, *see* Pet'r's Reply at 5, and at oral argument. It argues, however, that eMed's fraudulent inducement claim is actually directed to the contract as a whole, not to the arbitration provision in particular. That's

not the way eMed pitches it.  It contends (supported by various affidavits) that it reached

agreement with Abbott on contractual terms that were memorialized in a written term

sheet that said nothing about arbitration, a subject that eMed says had not come up

during the parties' negotiations.  Then, eMed says, it received a draft agreement that

contained an arbitration requirement, and an onerous one at that, at least as eMed saw

it.[1]  eMed contends it objected, but Abbott said it would not consider any modifications

to the arbitration provision.  eMed contends its resistance was overcome following

meetings between its principal and Abbott's then president/chief executive officer.

During these meetings, eMed claims, Abbott made certain promises and assurances

that eMed contends were false, and it omitted to disclose other material information.

eMed says that it signed the parties' agreement, which included the arbitration

provision, based on these false promises, assurances, and omissions.  For present

purposes, eMed's fraud-in-the-inducement challenge is sufficiently targeted to the

arbitration provision that it falls on the "for the court" side of the line drawn in *Prima

Paint* and *James.*

eMed's effort to pursue this contention in court instead of arbitration founders,

however, due to the contract's no-reliance clause.  This term states that "[e]ach party . .

. hereby acknowledges that neither it nor any of its affiliates has relied on any

information other than the representations and warranties expressly set forth in this

agreement."  Pet. to Compel Arb., Ex. A § 9.5.  A no-reliance provision like this bars

fraud-in-the-inducement claims that are based on discussions outside the four corners

---

[1] The draft agreement was not provided by Abbott, eMed contends, until after eMed had already made significant investments in the parties' proposed venture following execution of the term sheet.

of the contract. *See Extra Equipamentos e Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 724 (7th Cir. 2008). *Extra Equipamentos* indicates that there are circumstances in which a no-reliance clause may not be enforceable, *see id.* at 724-25, but eMed has offered no argument supported by legal authority that would suggest that this is such a case, and this plainly is not a situation involving an unsophisticated layperson who might not have understood the import of the clause.[2]

    *Marler v. Wulf*, 2021 IL App (1st) 200200-U, 2021 WL 4476665, cited by eMed, is distinguishable. The no-reliance provision at issue in that case stated that "[n]one of the Parties hereto shall be bound by or charged with any oral or written agreements, representations, warranties, statements, promises or understandings with respect to the subject matter hereof, not specifically set forth or referred to in this Agreement." *Id.*, 2021 WL 4476665, at *11. The court acknowledged that "[a] fraud claim based on misrepresentations outside a contract can be precluded by a non-reliance clause," *id.*, but it ruled that the term did not bar the plaintiff's claim. This was so in *Marler*, however, due to a separate contractual provision in which each party warranted that it had made full disclosure of relevant circumstances—a provision that the plaintiff contended the defendant had breached. *Id.*, at *12. No parallel provision appears in eMed's contract with Abbott. In short, the "out" regarding the no-reliance clause that existed in *Marler* is not present here.

    The court in *Marler* also concluded that at the time of the relevant representations, the parties were in a fiduciary relationship, requiring full disclosure of

---

[2] eMed is free, of course, to advance this argument before the arbitrator when addressing the merits of the claims by or against Abbott. It will be up to the arbitrator to decide the merits of the contention if eMed asserts it.

material facts, and thus the contractual no-reliance clause did not bar the plaintiff's fraud claim. In its response to the petition to compel arbitration, eMed makes a passing attempt to suggest that there was something similar here. It has done nothing, however, to develop the point. No part of the vaguely sketched argument that eMed makes on this point suggests that there was a fiduciary relationship here at the relevant time, as opposed to a relationship between contracting parties, both of which were sophisticated. The Court finds the argument to be insufficiently developed to make the point for present purposes; it is therefore forfeited (without prejudice, of course, to eMed advancing this contention before the arbitrator in an appropriate context). *See, e.g.,* *M.G. Skinner & Assocs. Ins. Agy. v. Norman-Spencer Agy., Inc.*, 845 F.3d 313, 331 (7th Cir. 2017).

The Court is also unpersuaded by eMed's reliance on *Walls v. VRE Chicago Eleven, LLC*, No. 16 C 4048, 2017 WL 5477554 (N.D. Ill. Sept. 29, 2016). In concluding that the no-reliance provision in that case did not preclude the plaintiff's contentions for purposes of a motion to dismiss, the court relied in part on the fact that the clause represented that it "is not relying on any representations or warranties . . . by the seller," but its lawsuit was based on omissions, not representations or warranties. *See id.* at *2 (quoting the provision), *3-4. The no-reliance term in the present case is broader; it disclaims reliance on any "information" other than the contract's express representations and warranties. In addition, in denying the defendant's motion to dismiss in *Walls*, the court concluded that there was a legitimate factual question regarding the provision's enforceability. *Id.* at *7. No such question has been raised

here.[3]

For these reasons, the Court concludes that eMed has not asserted a viable contention that it was fraudulently induced to enter into the arbitration provision.

As indicated earlier, eMed also argues that the arbitration provision is unconscionable and therefore unenforceable completely apart from the claim of fraud in the inducement. eMed cites both procedural unconscionability, which focuses on whether a contractual term is unduly difficult to understand and/or was extracted by one-sided bargaining power, and substantive unconscionability, which involves consideration of whether the term is inordinately one-sided. *See, e.g., Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 535 (7th Cir. 2011).

The arbitration provision is not procedurally unconscionable for the reasons just discussed. eMed's procedural unconscionability claim is essentially the same as its fraud-in-the-inducement claim, which the Court has overruled as a basis not to enforce the arbitration term. The Court notes, in this regard, that this is not a situation in which the party claiming unconscionability was lacking in sophistication or bargaining power—at least, eMed has not offered evidence tending to show that. On the question of substantive unconscionability, the arbitration provision is not one-sided; it applies to claims by either party and applies equally to Abbott and eMed. The provision effectively

---

[3] Finally, the court in *Typenex Co-Investment, LLC v. Solar Wind Energy Tower, Inc.*, 123 F. Supp. 3d 1017 (N.D. Ill. 2015), also cited by eMed, made no determination regarding the unenforceability or inapplicability of a no-reliance term. As the court in that case noted, the plaintiff "d[id] not argue that the [parties'] Agreement contains a no-reliance clause" but rather characterized the term at issue as an "integration" clause, which is materially different. *See id.* at 1027. In fact, the clause at issue in *Typenex* did not include "no reliance" language, unlike the provision at issue in this case. *See id.* at 1024 (quoting the contract).

7

eliminates prehearing discovery, but eMed has offered no basis to believe that this benefits Abbott disproportionately. That aside, the law of unconscionability does not invalidate an arbitration term that imposes significantly pared-down procedures for arbitration, at least not in situations like this one where the party challenging the term is not an individual that lacked bargaining power. *See generally Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) ("Just as [parties] may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." (internal citation omitted)).

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment granting Abbott Rapid DX North America, LLC's petition to compel arbitration and directing eMed, LLC and eMed Labs, LLC to submit their disputes with Abbott to arbitration pursuant to the terms of the parties' Supply, Distribution and License Agreement.

Date: December 30, 2022

_____
MATTHEW F. KENNELLY
United States District Judge